## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| LCFE, LLC    and<br>THE FAMILY PRACTICE, INC.<br><br>Plaintiffs,<br><br>v.<br><br>SYNDUIT, LLC and<br>JARED YELLIN,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No.<br><br>CIVIL ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR DAMAGES
## AND INJUNCTIVE RELIEF

COME NOW Plaintiffs LCFE, LLC (hereinafter "LCFE") and THE FAMILY

PRACTICE, INC (hereinafter "TFP") (collectively, "Plaintiffs") and file this Complaint for

Damages and Injunctive Relief against Defendants Synduit, LLC (hereinafter "Synduit") and

Jared Yellin (hereinafter "Yellin") (collectively, "Defendants"), showing this Court as follows:

### I.    JURISDICTION AND VENUE

1.      This is an action for trademark infringement, trademark dilution, copyright

infringement, misappropriation of trade secrets, unlawful business practices, and related causes

of action arising from Defendants' improper use of Plaintiffs' registered trademarks, copyrights

and trade secrets.

2.      This Court has subject matter jurisdiction over the claims in this action pursuant

to 28 U.S.C. § 1331, federal question(s).

3.      Venue in this Court is proper under 28 U.S.C. § 1391(b)(1) because both

Defendants reside in New Jersey and this district.

4.      The Court has personal jurisdiction over Defendants since they both reside in this district.

## II.      THE PARTIES

5.      At all times material hereto, LCFE is and has been a limited liability company existing under and by virtue of the laws of the State of Georgia with its principal place of business located at 533 C Johnson Ferry Road, Suite 200, Marietta, GA 30068.

6.      At all times material hereto, TFP is and has been a limited liability company existing under and by virtue of the laws of the State of Georgia with its principal place of business located at 533 C Johnson Ferry Road, Suite 200, Marietta, GA 30068.

7.      Defendant Synduit is a New Jersey limited liability company.

8.      Defendant Yellin is Synduit's founder and CEO.

## III.      FACTS COMMON TO ALL CAUSES OF ACTION

### A.      Plaintiffs, Their Trademarks, Copyrights and Trade Secrets

9.      Plaintiffs are well-known providers of chiropractic training, educational services (including, but not limited to, live and online classes), seminars and workshops in the field of health and wellness. Plaintiffs further provide to customers marketing and communication tools, patient relationship and content management, e-commerce and email marketing services.

10.      Plaintiffs have engaged in extensive marketing and promotion of a series of nonfiction books known as "The 100 Year Lifestyle®," and have a registered United States trademark for "The 100 Year Lifestyle®" under Registration Serial Number 78-842,463.

11.      Plaintiffs have engaged in extensive marketing and promotion of various sound and video recordings featuring educational programs in the field of health and wellness under the

name "The 100 Year Lifestyle®," and have a registered United States trademark for "The 100 Year Lifestyle®" under Registration Serial Number 78-842,458.

12.    Plaintiffs have engaged in extensive marketing and promotion of various educational services, namely providing live and online classes, seminars and workshops in the field of health and wellness under the name "The 100 Year Lifestyle®," and have a registered United States trademark for "The 100 Year Lifestyle®" under Registration Serial Number 78-842,474.

13.    Plaintiffs have marketed and promoted such books, services and online classes under the Marks to chiropractors across the country.

14.    Plaintiffs have further marketed and promoted such books, services and online classes under the Marks to chiropractic consultants who market services to chiropractors.

15.    A true and correct copy of the filing for the registrations mentioned above is attached hereto as Exhibit "A" (the foregoing "The 100 Year Lifestyle®" marks are collectively referred to herein as "the Marks").

16.    LCFE is the sole owner of the Marks, and exclusively licenses such Marks and Materials (as hereinafter defined) to TFP through a license agreement.

17.    Due to Plaintiffs' extensive use and promotion of the Marks, Plaintiffs have built up significant goodwill therein and have enjoyed significant sales of their services and products bearing the Marks.

18.    At least since February 22, 2007, Plaintiffs have utilized services and products bearing the Marks.

19.    The Marks have acquired strong secondary meaning and are strong trademarks. Plaintiffs' services and products bearing the Marks have become famous and are recognized

across the United States. Plaintiffs have undertaken significant efforts to protect and defend the Marks.

20.     Plaintiffs hold a federally registered copyright in the work known as "The 100-Year Lifestyle: Dr. Eric Plasker's Breakthrough Solution for Living Your Best Life – Every Day of Your Life," registration number TX0006560135, effective date March 1, 2007.

21.     Plaintiffs hold a federally registered copyright in the work known as "The 100-Year Lifestyle: The High Energy Fitness Program for Living at Your Peak Throughout Your Lifetime," registration number TX0007276212, effective date December 22, 2009.

22.     A true and correct copy of the filing for the registrations mentioned above is attached hereto as Exhibit "B" (the foregoing copyrights are collectively referred to herein as "the Copyrights").

**B.     Plaintiffs' Licensed Affiliate Program**

23.     Plaintiffs deliver a product and service package to chiropractors known as "The 100 Year Lifestyle® Licensed Affiliate Program" (also referred to herein simply as the "Licensed Affiliate Program").

24.     Under this program, the chiropractor (a "Licensed Affiliate") signs a Program and License Agreement (PLA) that grants during the contract term a limited license to use The 100 Year Lifestyle® resources, including, but not limited to, the Marks, the Copyrights, and marketing, patient education, web, social media, email and training materials and resources (collectively, "The 100 Year Lifestyle® Materials" or "Materials").

25.     Access to electronic and web-based 100 Year Lifestyle® Materials is made available through Plaintiffs' website. Access to these internal portions of Plaintiffs' website is

strictly controlled and provided only to Licensed Affiliates that contractually agree to maintain the confidentiality and security thereof.

26.     Many portions of the Materials constitute Plaintiffs' trade secrets, in that they (a) derive independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use; and (b) are the subject of efforts that are reasonable under the circumstances to maintain their secrecy.

27.     The Licensed Affiliate pays Plaintiffs a significant annual license fee for use of the Marks, the Copyrights and The 100 Year Lifestyle® Materials, plus additional fees for additional products.

28.     To ensure each Licensed Affiliate's exclusive use within a particular geographic area, Plaintiffs also provide territorial protection by ensuring no other Licensed Affiliate may use the Marks or Materials within another Licensed Affiliate's territory.

**C.     Defendant's Unlawful Activities**

29.     Upon information and belief, Defendant Synduit was created in the State of New Jersey in December 2011.

30.     Synduit offers small to mid-sized businesses a full suite of marketing and communications tools including customer relationship management, an advanced content management system, ecommerce, email marketing and affiliate marketing.

31.     Synduit assists chiropractors nationwide with the development of their webpages for marketing purposes.

32.     Defendant Yellin operates, supervises, manages and owns Synduit.

33. Upon information and belief, Defendants have been using "The 100 Year Lifestyle®" Marks and Materials without license or permission from Plaintiffs, by advertising the Marks and Materials and placing the Marks on Synduit's customers' web pages in exchange for compensation and placing the Marks in each customer's search engine(s).

34. Non-exhaustive examples of Defendant's use of the Marks are attached hereto collectively as Exhibit "C".

35. Upon information and belief, Plaintiffs allege that at all relevant times, Defendants were aware of Plaintiffs' proprietary interest in their distinctive and unique Marks and Defendants willfully and intentionally copied Plaintiffs' trademarks.

36. Upon information and belief, Defendants have taken Plaintiffs' copyrighted material and/or portions thereof and pasted them on Defendants' customers' websites and/or marketing materials for profit.

37. Upon information and belief, Defendants have also used Plaintiffs' Marks, Materials and Copyrights to target and solicit sales from Plaintiffs' Licensed Affiliates with whom Plaintiffs have or had a contractual relationship.

38. Upon information and belief, Defendants have also used Plaintiffs' Marks, Materials and Copyrights to target and solicit sales from Plaintiffs' prospective customers, which include both chiropractors and chiropractic consultants that market to chiropractors.

39. Upon information and belief, Defendants, through any number of rogue Licensed Affiliates or other third parties, gained access to internal areas of Plaintiffs' website that are only made available to Licensed Affiliates.

40.    Upon information and belief, Defendants, through such improper and unauthorized access, obtained and misappropriated Plaintiffs' Materials, confidential information and trade secrets.

### FIRST CAUSE OF ACTION
**Trademark Infringement Under the Lanham Act and Common Law**

41.    Defendants have used in commerce, without Plaintiffs' consent, Plaintiffs' Marks such that it is likely to cause confusion with respect to the source and origin of Defendants' products and services and is likely to cause confusion or mistake and to deceive consumers as to the affiliation, connection, or association of Plaintiffs with Defendant and/or the Marketing or sale of their products and services.

42.    Defendants' acts constitute an infringement of Plaintiffs' Registered Marks, in violation of the Lanham Act, 15 U.S.C. § 1114, and the common law.

43.    As a direct and proximate result of Defendants' wrongful acts, Plaintiffs have suffered and continue to suffer and/or are likely to suffer damage to their business reputation and goodwill. Defendants will continue, unless restrained, to use Plaintiffs' Marks and will cause irreparable damage to Plaintiffs. Plaintiffs have no adequate remedy at law. Plaintiffs are entitled to an injunction restraining Defendants, their officers, agents, and employees, and all persons acting in concert with Defendants, from engaging in further acts of trademark infringement. Such harm will continue and increase until Defendants are preliminarily and permanently enjoined from their unlawful conduct.

44.    Plaintiffs are further entitled to recover from Defendants the actual damages that they sustained and/or are likely to sustain as a result of Defendants' wrongful acts. Plaintiffs are presently unable to ascertain the full extent of the monetary damages that they have suffered and/or are likely to suffer by reason of Defendants' acts of trademark infringement.

45.     Plaintiffs are further entitled to recover from Defendants the gains, profits, and advantages that Defendants have obtained as a result of their wrongful acts. Plaintiffs are presently unable to ascertain the full extent of the gains, profits, and advantages that Defendants have realized by reason of their acts of trademark infringement.

46.     Because of the willful nature of Defendants' wrongful acts, Plaintiffs are entitled to an award of damages under 15 U.S.C. § 1117.

**SECOND CAUSE OF ACTION**
**False Designation of Origin Under the Lanham Act**

47.     Defendants' actions as alleged herein constitute a false designation of origin in violation of 15 U.S.C. § 1125(a).

48.     As a direct and proximate result of Defendants' wrongful acts, Plaintiffs have suffered and continue to suffer and/or are likely to suffer damage to their business reputation and goodwill. Defendants will continue, unless restrained, to use marks confusingly similar to Plaintiffs' Marks and will cause irreparable damage to Plaintiffs. Plaintiffs have no adequate remedy at law. Plaintiffs are entitled to an injunction restraining Defendants, their officers, agents, and employees, and all persons acting in concert with Defendants, from engaging in further acts of false designation of origin. Such harm will continue and increase until Defendants are preliminarily and permanently enjoined from their unlawful conduct.

49.     Plaintiffs are further entitled to recover from Defendants the actual damages that they sustained and/or are likely to sustain as a result of Defendants' wrongful acts. Plaintiffs are presently unable to ascertain the full extent of the monetary damages that they have suffered and/or are likely to suffer by reason of Defendants' acts of false designation of origin.

50.     Plaintiffs are further entitled to recover from Defendants the gains, profits, and advantages that Defendants have obtained as a result of their wrongful acts. Plaintiffs are

presently unable to ascertain the full extent of the gains, profits, and advantages that Defendants have realized by reason of their acts of false designation of origin.

51.      Because of the willful nature of Defendants' wrongful acts, Plaintiffs are entitled to an award of damages under 15 U.S.C. § 1117.

<u>**THIRD CAUSE OF ACTION**</u>
**Trademark Dilution Under the Lanham Act**

52.      Plaintiffs' Marks are inherently distinctive and have acquired distinction from other marks through long, continuous and exclusive use by Plaintiffs.

53.      Plaintiffs' Marks are famous and distinctive within the meaning of 15 U.S.C. §§ 1125(c)(1) and 1127.

54.      Defendants' unlawful activities described in this complaint constitute unauthorized use in interstate commerce of Plaintiffs' Marks. Defendants' unlawful activities were conducted with full recognition of Plaintiffs' use of their Marks and commenced after the Marks had become registered and famous. On information and belief, such activities are likely to dilute, have diluted, and will continue to dilute or be likely to dilute, the distinctive quality of Plaintiffs' Marks by lessening their capacity to identify and distinguish Plaintiffs' goods and services and by blurring and tarnishing such Marks to the damage and harm of Plaintiffs, their customers, and the public, in violation of 15 U.S.C. § 1125(c)(1).

55.      As a direct and proximate result of Defendants' wrongful acts, Plaintiffs have suffered and continue to suffer and/or are likely to suffer dilution of the distinctive quality and the blurring and tarnishing of their Marks. Defendants will continue, unless restrained, to use marks confusingly similar to Plaintiffs' stylized Marks and will cause irreparable damage to Plaintiffs. Plaintiffs have no adequate remedy at law. Plaintiffs are entitled to an injunction restraining Defendants, their officers, agents, and employees, and all persons acting in concert

with Defendants, from engaging in further acts of false designation of origin. Such harm will continue and increase until Defendants are preliminarily and permanently enjoined from their unlawful conduct.

56.     Plaintiffs are further entitled to recover from Defendants the actual damages that they sustained and/or are likely to sustain as a result of Defendants' wrongful acts. Plaintiffs are presently unable to ascertain the full extent of the monetary damages that they have suffered and/or are likely to suffer by reason of Defendants' acts of dilution.

57.     Plaintiffs are further entitled to recover from Defendants the gains, profits, and advantages that Defendants have obtained as a result of their wrongful acts. Plaintiffs are presently unable to ascertain the full extent of the gains, profits, and advantages that Defendants have realized by reason of their acts of dilution.

58.     Plaintiffs are informed and believe, and on that basis allege, that Defendants committed the acts alleged above: (a) with previous knowledge of Plaintiffs' prior use of their Marks; (b) with the willful intent to trade on Plaintiffs' goodwill and reputation; and/or (c) with the willful intent to cause dilution of Plaintiffs' Marks.

59.     As a result, Plaintiffs have been damaged in an as yet unascertained amount. Because of the willful nature of Defendants' wrongful acts, Plaintiffs are entitled to an award of damages pursuant to 15 U.S.C. § 1117.

## FOURTH CAUSE OF ACTION
### Copyright Infringement – 17 U.S.C. §§ 101 *et seq.*

60.     Plaintiffs at all relevant times held copyrights in the written version of The 100 Year Lifestyle®, Plaintiffs' website and other original works of authorship.

61.     On information and belief, Defendants had access to the Copyrights through Plaintiffs' website and/or other sources.

62.     Defendants did not have authorization of Plaintiffs or the law to reproduce, distribute, display, or create derivative works of Plaintiffs' copyrights or any portions thereof.

63.     Defendants violated Plaintiffs' exclusive rights granted in 17 U.S.C. § 106, specifically its exclusive right to: (1) reproduce the copyrighted work in copies; (2) prepare derivative works based on the copyrighted work; (3) distribute copies of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; and (4) display the copyrighted work publicly.

64.     As Defendants began to reproduce, display, and distribute the Copyrights in or around January 1, 2014, all claims of infringement are within the three-year statute of limitations period pursuant to 17 U.S.C. § 507(b).

65.     As a direct and proximate result of their wrongful conduct, Defendants have realized and continue to realize profits and other benefits rightfully belonging to Plaintiffs for the Copyrights.

66.     Accordingly, Plaintiffs are entitled to and seek an award of actual damages and profits pursuant to 17 U.S.C. § 504(b).

67.     In the alternative, Plaintiffs are entitled to and seek statutory damages for Defendants' infringement of the Copyrights, including attorneys' fees and costs, pursuant to 17 U.S.C. §§ 504(c)(1) and 505.

68.     The infringement by Defendants was willful and performed with knowledge that the reproduction, display, and distribution of the Copyrights were unauthorized; Plaintiffs is therefore entitled to the recovery of enhanced statutory damages pursuant to 17 U.S.C. 504 (c)(2).

## FIFTH CAUSE OF ACTION
### Injury to Business Reputation and Dilution under New Jersey Common Law

69.     The use by Defendants of the Marks: (a) dilutes or is likely to dilute the distinctive quality of Plaintiffs' Marks; (b) reduces or is likely to reduce the value of Plaintiffs' goodwill and business reputation; and (c) destroys or is likely to destroy the exclusive association by the public of Plaintiffs' Marks; Defendants' wrongful acts constitute injury to business reputation and dilution of the distinctive quality of Plaintiffs' Marks within the meaning of New Jersey law.

70.     As a direct and proximate result of Defendants' wrongful acts, Plaintiffs are likely to suffer, and/or have suffered, and are likely to continue to suffer, dilution of Plaintiffs' Marks and damage to their business reputation and goodwill in an amount subject to proof.

71.     Defendants will continue, unless restrained, to use the Marks, and will cause irreparable damage to Plaintiffs. Plaintiffs have no remedy at law.

72.     Plaintiffs are entitled to an injunction restraining Defendants, their officers, agents, and employees, and all persons acting in concert with Defendant, from engaging in further acts of injury to Plaintiffs' business reputation and dilution of Plaintiffs' Marks. Such harm will continue and increase until Defendants are preliminarily and permanently enjoined from their unlawful conduct.

## SIXTH CAUSE OF ACTION
### Unfair Competition Under New Jersey Common Law

73.     Defendants' improper uses of Plaintiffs' Marks and copyrighted material constitute unlawful business acts and/or practices under the New Jersey common law.

74.     Defendants' conduct constitutes unfair business acts and/or practices because Defendants have unfairly used and infringed Plaintiffs' Marks pursuant to the Lanham Act while engaging in a business practice.

75.     Defendants' conduct constitutes fraudulent business acts and practices because Defendants have deceptively and unfairly marketed, advertised, sold, and/or distributed products and/or programs under trademarks and/or service marks that are confusingly similar to Plaintiffs' Marks.

76.     As a direct and proximate result of Defendants' wrongful acts, Plaintiffs are likely to suffer, and/or have suffered, and are likely to continue to suffer damage to their business reputation and goodwill. Defendants will continue, unless restrained, to use the Marks, and to deceptively and unfairly market, advertise, and promote their business. This will cause irreparable damage to Plaintiffs. Plaintiffs have no adequate remedy at law. Plaintiffs are entitled to an injunction restraining Defendants, their officers, agents, and employees, and all persons acting in concert with Defendants, from engaging in further acts of unfair competition. Such harm will continue and increase until Defendants are preliminarily and permanently enjoined from their unlawful conduct.

77.     Plaintiffs are further entitled to recover from Defendants the actual damages that they sustained and/or are likely to sustain as a result of Defendants' wrongful acts. Plaintiffs are presently unable to ascertain the full extent of the monetary damages that they have suffered and/or are likely to suffer by reason of Defendants' acts of unfair competition.

78.     Plaintiffs are further entitled to recover from Defendants the gains, profits, and advantages that Defendants have obtained as a result of their wrongful acts. Plaintiffs are

presently unable to ascertain the full extent of the gains, profits, and advantages that Defendants have realized by reason of their acts of unfair competition.

79.     Because of the willful nature of Defendants' wrongful acts, Plaintiffs are entitled to an award of punitive damages.

## SEVENTH CAUSE OF ACTION
### Contributory Infringement

80.     Upon information and belief, Yellin, without the authority of the Plaintiffs or the law and in violation of 17 U.S.C. § 501, infringed contributorily by intentionally inducing and encouraging direct infringement by Synduit.

81.     Yellin is contributorily liable for the intentional encouragement of direct infringement by knowingly taking steps which were substantially certain to result in direct infringement.

82.     As a direct and proximate result of Yellin's contributory infringement, Plaintiffs' have suffered injuries and damages and are therefore entitled to the remedies set forth under 17 U.S.C. §§ 504 and 505.

## EIGHTH CAUSE OF ACTION
### Unjust Enrichment Under Common Law

83.     By virtue of the egregious and illegal acts of Defendants as described above, Defendants have been unjustly enriched in an amount to be proven at trial.

84.     Defendants' retention of monies gained through their deceptive business practices, infringements, and misappropriations and otherwise would serve to unjustly enrich Defendants and would be contrary to the interests of justice.

## NINTH CAUSE OF ACTION
### Tortious Interference with Contracts

85.     Through significant expense, time and effort, Plaintiffs have sold licenses to their customers under Plaintiffs' Licensed Affiliate Program.

86.     Plaintiffs maintained contractual relationships with such customers.

87.     Defendants have maliciously, intentionally and improperly interfered with such contractual relationships.

88.     Specifically, Defendants have misappropriated Plaintiffs' Marks, Materials, Copyrights and trade secrets – protected interests of Plaintiffs – and used same to induce Plaintiffs' customers to terminate their contracts with Plaintiffs and purchase competitive products and services from Defendants.

89.     Defendants' actions were willful, intentional and without justification or excuse.

90.     But for Defendants' actions, there is a reasonable likelihood that such customers would have continued to license the Marks, Materials and Copyrights from Plaintiffs through Plaintiffs' Licensed Affiliate Program.

91.     Consequently, Plaintiffs have been damaged as a direct and proximate result of Defendants' tortious conduct.

## TENTH CAUSE OF ACTION
### Tortious Interference with Prospective Customers

92.     Through significant expense, time and effort, Plaintiffs market and advertise their Marks and Materials to prospective customers in an effort to sell licenses under Plaintiffs' Licensed Affiliate Program.

93.     Defendants, through devious, improper and unrighteous means, have attempted to lure and have actually lured away Plaintiffs' prospective customers.

94.     Specifically, Defendants have misappropriated Plaintiffs' Marks, Materials, Copyrights and trade secrets and used same to attract and lure away Plaintiffs' prospective customers.

95.     Defendants' actions were willful, intentional and without justification or excuse.

96.     But for Defendants' actions, there would have been a reasonable probability that such prospective customers would have licensed the Marks, Materials and Copyrights from Plaintiffs pursuant to Plaintiffs' Licensed Affiliate Program.

97.     Consequently, Plaintiffs have been damaged as a direct and proximate result of Defendants' tortious conduct.

**ELEVENTH CAUSE OF ACTION**
**Misappropriation of Trade Secrets**

98.     Plaintiffs' Materials constitute trade secret under the New Jersey Trade Secrets Act, as well as the Uniform Trade Secrets Act.

99.     Defendants knowingly acquired Plaintiffs' trade secrets through improper means.

100.    Defendants thereafter used and disclosed Plaintiffs' trade secrets without Plaintiffs' express or implied consent.

101.    As a result of Defendants' misappropriation, Plaintiffs are entitled to injunctive relief barring Defendants from continuing their unlawful behavior.

102.    Plaintiffs are further entitled to monetary damages, including actual loss caused by the misappropriation, as well as Defendants' unjust enrichment stemming from the misappropriation.

103.    Because Defendants' misappropriation was willful and malicious, Plaintiffs are further entitled to recover attorney's fees and punitive damages.

## IV.     PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for judgment against the Defendant as follows:

(A)     For damages in an amount to be proven at trial for trademark infringement under 15 U.S.C. § 1114/Lanham Act § 43(a);

(B)     For damages in an amount to be proven at trial for false designation of origin under 15 U.S.C. § 1125(a);

(C)     For damages in an amount to be proven at trial for trademark dilution under 15 U.S.C. § 1125(c);

(D)     For damages to be proven at trial for common law unfair competition;

(E)     For damages in an amount to be proven at trial for unfair, fraudulent and illegal business practices under New Jersey common law;

(F)     For disgorgement of Defendants' profits under 15 U.S.C. § 1117(a);

(G)     For injunctive relief barring Defendants, their agents, employees, subsidiaries, licensees, successors, and assigns, and all other persons in active concert, privity or participation with them, from doing, abiding, causing or abetting any direct of indirect use of Plaintiffs' Marks, or any confusingly similar trademarks or service marks in any way, including advertising, promoting, or selling Defendants' products and services, which infringe upon Plaintiffs' rights or compete unfairly with Plaintiffs;

(H)     For an order from the Court requiring that Defendants provide complete accountings and for equitable relief, including that Defendants disgorge and return or pay their ill-gotten gains obtained from the illegal transactions entered

into and/or pay restitution, including the amount of monies that should have been paid if Defendants complied with their legal obligations, or as equity requires;

(I)     For an order from the Court that an asset freeze or constructive trust be imposed over all monies and profits in Defendants' possession which rightfully belong to Plaintiffs;

(J)     For destruction of the infringing articles in Defendants' possession under 15 U.S.C. § 1118;

(K)     For damages in an amount to be proven at trial for unjust enrichment;

(L)     For punitive damages for Defendants' willful and intentional misconduct;

(M)     For damages to be proven at trial for tortious interference with a contractual or business relationship;

(N)     For all costs of suit; and

(O)     For such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury in this action.

DATED: December 10, 2014          **MCSHEA LAW FIRM, P.C.**

By:___s/Ralph  J. Kelly_____
Ralph J. Kelly
Donna M. Brennan-Scott
McShea Law Firm, P.C.
1500 Market Street, Suite 4000
Centre Square, West Tower
Philadelphia, PA 19102
(215) 599-0800

*Attorneys for Plaintiff*